## KERBUISH *v.* HAVERMEYERS & ELDER SUGAR REFINING CO.[1]

### CHURNSIDE *v.* SAME.

*(District Court, S. D. New York.   May 13, 1890.)*

**SHIPPING—FREIGHT—SHORTAGE IN DELIVERY—EVIDENCE.**

  Two vessels delivered sugar in bags to the respondent, and thereafter, on suit brought to recover their freight, the defense of short delivery was interposed. The vessels proved that their hatches were kept battened down until the unloading was taken charge of by the respondent, and that all the sugar received was delivered.   The evidence showed rough usage of the bags by the respondent in unloading, whereby some bags and their marks were destroyed.   No direct proof was given by respondent of the number of bags actually received.   *Held* that, though the ship was bound to account for the number of bags shipped, under such circumstances, the burden of proving shortage being on the respondent, the mere absence of a few marks was not sufficient proof of shortage, and that the alleged offset failed, and the vessels were entitled to recover their freight.

In Admiralty.   Action for freight, with offset of shortage of cargo.
*Convers & Kirlin,* for libelants.
*John E. Parsons,* (*H. B. Closson,* of counsel,) for respondent.

BROWN, J.   The Hampshire and the Ixia were both chartered by the respondent for the transportation of sugar.   The shortage in weight of the sugar delivered is not 1 per cent. upon the amount stated in the bills of lading.   This is so small that, considering the liability of sugar to vary from inherent quality, it affords no presumption of neglect of duty on the part of either ship in transportation.   No allowance can be made, therefore, merely for this difference in weight.   But the ship is accountable for the number of bags that she received on board.   There ought to be no shortage on these.   There is no exception in the bill of lading that can cover the alleged shortage of the 15 bags in one case, and of 11 bags in the other.   The ship must account for the bags she does not deliver.   There is general evidence in behalf of each ship that her hatches were kept battened down until the unlading was taken charge of by the respondent, and that all the sugar received was delivered.   The respondent attended

---

[1]Reported by Edward G. Benedict, Esq., of the New York bar.

to the discharge. The ship kept no tally. Under such circumstances, the burden of proving a shortage on the number of bags received is on the respondent. There is no direct evidence of the number actually received, and hence no strict proof of shortage. No tally is proved. The respondent relies upon the libelants' answers to the third interrogatory. If the answer to this interrogatory admitted a short delivery of bags, the ship would, doubtless, be required to account for the shortage, or pay for it. I do not think such is the effect of the answer, and of the testimony. The third interrogatory is: "(a) How many bags containing sugar were delivered ex Hampshire to the respondents? *Answer.* 25,711 bags." This is 211 more than are called for by the bills of lading. The Ixia answered the same interrogatory, "19,085 bags," which is an excess of 76. The next interrogatory is: "(b) How many bags of sugar marked as described in the said bill of lading were delivered ex Hampshire? *Answer.* 25,474 bags." The Ixia answers, "18,982." The third interrogatory is: "*Question.* How many empty bags marked as described in the bill of lading were delivered?" The Hampshire answers, "2." The Ixia answers, "None." The libelants' testimony shows, however, that the bags, in course of the discharge, were roughly handled by the respondent's employes who unloaded the cargo; that this rough handling was continued against the protest of the ship's officers; that many of the bags were thereby torn, and some destroyed, and their contents spilled; that an unusual quantity of sweepings remained after the bags were discharged; and that those sweepings, together with old and torn bags, were placed in other new bags or sacks. The ship's own coopers were employed in repairing the injured bags and in sewing old bags upon the new sacks, bag for bag, so that the new bag should be counted in place of the old one. This is the practice on discharging. There was some dissatisfaction on the stevedore's part because the ship's coopers were thus employed. He complained that they did not work fast enough; and it was very likely, under such circumstances, that some of the old bags and marks were not kept separate and turned over to the coopers, or tacked to the new bags, as should have been done. I have no doubt, from the testimony, that a considerable number of the bags was destroyed, and their marks lost or obliterated, through the acts of the respondent's employes. The respondent cannot require the vessel to pay for bags whose marks, in consequence of such handling, were not produced. The testimony fully explains any apparent discrepancies in the answers to this interrogatory. The utmost that is admitted is that the number of bags "marked as described in the bills of lading" were a few less, while the number of bags delivered was more. The absence of the proper mark is sufficiently accounted for by the rough usage of the respondent in unloading, whereby bags and marks were destroyed together. In the absence, therefore, of any strict proof that the actual number of bags received was less than the amount shipped, the alleged offset fails, and the libelants in each case are entitled to a decree, with costs.